F I L E D

APR 1 2 2011

*Jayne V Miller* IRON CO.
CIRCUIT CLERK
IRONTON, MO

Jeffery N Lamb, *pro se*
Frances C Lamb, *pro se*
PO Box 403
Ironton, Missouri 63650
Voice: 573.271.9781
Fax:    636.600.5244

## IN THE CIRCUIT COURT OF IRON COUNTY MISSOURI

| | |
|---|---|
| **JEFFERY N LAMB**, *pro se*, ) <br> And ) <br> **FRANCES C LAMB**, *pro se*, ) <br> ) <br> Plaintiffs ) <br>   v. ) <br> ) <br> **BANK OF AMERICA, NA** ) <br> **COUNTRYWIDE BANK FSB And** ) <br> **BAC HOME LOANS SERVICING, LP** ) <br> **FKA COUNTRYWIDE HOME** ) <br> **LOANS SERVICING, LP And** ) <br> **FEDERAL NATIONAL MORTGAGE** ) <br> **ASSOCIATION And** ) <br> **MORTGAGE ELECTRONIC** ) <br> **REGISTRATION SYSTEMS, INC And** ) <br> **KOZENY & MCCUBBIN, LC And** ) <br> **JOHN DOE AND JANE DOE** ) <br> Individuals yet to be determined, if any, ) <br> also involved in the real estate purchase ) <br> and real estate loan transactions involved ) <br> in this case And ABC CORPORATION ) <br> Corporations,   Partnerships, LLCs, entities ) <br> *yet to be determined, if any, also involved* ) <br> *in the real estate purchase and real estate* ) <br> *loan transactions involved in this case* ) <br> **And XYZ TRUST/TRANCHE/** ) <br> **SECURITIZATION POOL/HEDGE** ) <br> **FUND INVESTMENT CONDUIT And** ) <br> **Corporations, Partnerships, LLCs,** ) <br> putative Promissory Note Beneficiaries ) <br> and entities yet to be determined, if any, ) <br> also involved in the securitization of real ) <br> estate mortgage backed securities having ) <br> an interest in the Promissory Notes/loans ) <br> which are the subject of this case. ) <br> ) <br> Defendants ) | Case No.:      11IR-CC00013 <br><br> **PLAINTIFFS' VERIFIED AMENDED** <br> **PETITION FOR INJUNCTIVE RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

## I. PLAINTIFFS' VERIFIED AMENDED PETITION

1. Plaintiffs, *Jeffery N. Lamb, pro se,  and Frances C Lamb, pro se,* (hereinafter "Plaintiffs") bring this Complaint against *Bank of America, NA, Countrywide Bank, FSB,  BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP, Federal National Mortgage Corporation, Mortgage Electronic Registration Systems, Inc.,  Kozeny & McCubbin LC.,* (collectively hereinafter "Defendants")  and pleads as follows:

2. Defendants and/or their predecessors and their agents, officers, employees, and affiliated or associated parties, actions in engaging in a pattern of unlawful, fraudulent, or unfair predatory real estate practices causing Plaintiffs to become victims of such behavior and to be in jeopardy of losing their home through foreclosure.

3. Defendants and/or their predecessors unlawful, fraudulent, or unfair "predatory" lending practices directed against Plaintiffs involved  the following elements:

    a.  Making the loan predominately based on the foreclosure or liquidation value of the borrower's collateral rather than on the borrower's ability to repay the mortgage according to its terms;

    b.  Engaging in fraud or deception to conceal the real nature of the mortgage loan obligation.

    c.  Inducing the borrower to enter a loan modification predominately based on the foreclosure or liquidation value of the borrower's collateral rather than on the borrower's ability to repay the loan modification according to its terms; in order to obtain interest to real property claimed as collateral through an enforceable security interest to take non judicial action to effect dispossession and sale of borrower's real property.

    d.  Engaging in fraud or deception to conceal the real nature of the mortgage loan modification obligation.

    e.  Engaging in fraud or deception to take non judicial action to effect dispossession and sale of borrower's real property.

4. Defendants and/or their predecessors' goal in practicing these unlawful, fraudulent, or unfair "predatory" lending practices was to increase their share of the national mortgage market by mass producing loans for pre-sale or sale on the secondary market. In this scheme, borrowers, like Plaintiffs were nothing more than the means for producing more loans. Loans were originated with little or no regard for the borrower's financial ability to afford the loans to sustain home ownership.  Defendants and/or their predecessors were also motivated to engage in unlawful, fraudulent or unfair lending practices for personal and financial benefit.

## II. JURISDICTION

5. This court has subject matter jurisdiction based on federal question under 28 U.S.C. § 1331 and 1332
   (a) (1), 18 U.S.C. § 1964 (a), 12 U.S.C. § 2601, 2605, 15 U.S.C. § 1601, 1638 (b) (1), (2) (A) and
   1640 (a), (3), 1641,(f)(2) and U.S.C. § 1639 (b) (1), (h), (l) (2). This is an action asserting violations
   of Federal Statues commonly known as Truth in Lending Act (hereinafter "TILA"), Real Estate
   Settlement Procedures Act (hereinafter "RESPA"), and Regulation Z (hereinafter "Reg. Z"), with
   additional claims under Missouri Law. These claims all arise out of the same controversy and
   sequence of events.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) (2), in that a substantial part of the
   events giving rise to the claim occurred in this judicial district.

7. This court has personal jurisdiction over the parties as all Defendants are corporations that are licensed
   to do business in the State of Missouri or otherwise engage in business within the State of Missouri.

8. Jurisdiction of this court for the pendent State Claims is authorized by Federal Rule of Civil Procedure
   18(a).

9. Defendants, and each of them, regularly engage in business in the State of Missouri and regularly
   provide Loans to residents in the State of Missouri who wish to obtain a mortgage loan and who
   contact or are contacted by a loan officer in obtaining the necessary financing and/or engage in
   business in the State of Missouri and/or regularly provide services related to real estate mortgage
   banking.

10. Plaintiffs bring this action against Defendants for damages and harm resulting from the Defendants'
    negligent, fraudulent and unlawful conduct concerning a residential mortgage loan transaction,
    subsequent modification of said mortgage loan transaction, and foreclosure related activity to the
    property located at 18717 Highway E, Arcadia fka RR1 Box 54B, County of Iron, State of Missouri.

## III. PLAINTFFS

11. Plaintiffs Jeffery N Lamb and Frances C Lamb, husband and wife, reside at the residential property
    located at 18717 Highway E, Arcadia County of Iron, State of Missouri. formerly known as RR1 Box
    54B, Arcadia, County of Iron, State of Missouri. (hereinafter "Plaintiffs home")

## IV. DEFENDANTS

12. Plaintiffs are informed and believe and thereon allege that at all times mentioned in this Complaint, Defendants Bank of America, NA, Countrywide Bank, FSB, BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP, Federal National Mortgage Association, Mortgage Electronic Registration Systems, Inc., Kozeny & McCubbin LC., are diversified financial marketing and services corporations engaged primarily in residential mortgage banking and/or business related to real estate mortgage banking.

13. Plaintiffs are informed and believe and thereon allege that defendant Bank of America NA is a Delaware corporation with its principle place of business in Charlotte, North Carolina, is and was, at all times material hereto the parent company of BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP. Bank of America acquired Countrywide Financial through its purchase of $4.1 billion in stocks on or around January, 11, 2008.

14. Plaintiffs are informed and believe and thereon allege that defendant Countrywide Bank, FSB, a defunct entity is and was, at all times material hereto the "Lender" and "Payee" of the "Note" also, the "Lender" named on the security instrument entitled Deed of Trust. Countrywide Bank, FSB ceased to exist on or about April 27, 2009.

15. Plaintiffs are informed and believe and thereon allege that Defendant BAC Home Loans Servicing, LP formerly doing business as Countrywide Home Loans Servicing LP, a limited partnership organized in the State of Texas and doing business in the State of Missouri, is and was, at all times, material hereto, the "servicer" of the "Note". BAC Home Loans Servicing, LP is a subsidiary of Bank of America NA, and the two defendants are collectively referred to as "Bank of America". Bank of America currently does business and maintains branch offices throughout the State of Missouri.

16. Plaintiffs are informed and believe and thereon allege that Defendant Federal National Mortgage Association (hereinafter Fannie Mae) is a government sponsored enterprise placed into conservatorship in September 2008, overseen by the Federal Housing Finance Agency (hereinafter FHFA) is and was, at all times material hereto the "Investor". Plaintiffs name Federal National Mortgage Association as a Defendant to this action based on its identification as "Investor" in the MERS Servicer ID database.

17. Plaintiffs are informed and believe and thereon allege that Defendant Mortgage Electronic Registration Systems, Inc. (hereinafter MERS), is a Delaware corporation engaged in the business of

operating an electronic registry designed to track servicing rights and ownership of mortgage loans. It does business in Missouri as evidenced by inclusion of its name in the deed of trust in this case. MERS is and was, at all times material hereto the "Beneficiary" of the Deed of Trust, (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. Plaintiffs name MERS as a Defendant to this action based on its inclusion as "Beneficiary" in the Deed of Trust..

18. Plaintiffs are informed and believe and thereon allege that Defendant Kozeny and McCubbin LC, provides legal representation and services in matters of concern to the mortgage banking industry across Missouri, Kansas and Nebraska including but not limited to default solutions. Defendant Kozeny and McCubbin LC is and was, at all times material hereto purportedly "Successor Trustee", "Authorized Representative" and "Attorney in Fact".

19. Defendants JOHN DOE AND JANE DOE yet to be demined, if any, individuals also involved in the real estate purchase and real estate loan transactions involved in this case.

20. Defendants ABC CORPORATION, Corporations, Partnerships, LLCs, entities yet to be determined, if any, also involved in the real estate purchase and real estate loan transactions involved in this case.

21. Defendants XYZ TRUST/TRANCHE/SECURITIZATION POOL/HEDGE FUND INVESTMENT CONDUIT And Corporations, Partnerships, LLCs, putative Promissory Note Beneficiaries and entities yet to be determined, if any, also involved in the securitization of real estate mortgage backed securities having an interest in the Promissory Notes/loans which are the subject of this case.

22. Plaintiffs are ignorant of the true names of the Defendants sued herein under the fictitious names of JOHN DOE and JANE DOE, ABC CORPORATION and XYZ TRUST/TRANCHE/SECURITIZATION POOL/HEDGE FUND INVESTMENT CONDUIT, and Plaintiffs will amend this Complaint to allege such actual names as soon as they are ascertained. Plaintiffs are informed and believe and thereon allege that each of said fictitiously named Defendants is responsible in some manner for the act(s) complained of herein.

23. Plaintiffs are informed and believe and thereon allege that the named defendants and each of them at all relevant times herein were and still are agents for the fictitious defendants, for one another, and acting under the course and scope thereof, with knowledge and consent of each other.

## V. FACTS
### General Allegations and Background Facts

24. Plaintiff, Jeffery N Lamb entered into a Promissory Note with Defendant, Countrywide Home Loans, FSB, on September 28, 2007 in the amount of $142,300.00 for the purchase of residential property located at 18717 Highway E, Arcadia, Iron County, Missouri fka RR1 Box 54B, Arcadia, Iron County, Missouri (attached hereto as Exhibit 1). Said Note was secured by a Deed of Trust, entered into by Plaintiffs, Jeffery N Lamb and Frances C Lamb, husband and wife (attached hereto as Exhibit 2) wherein the lender was Defendant, Countrywide Home Loans FSB.

25. Plaintiffs have no experience beyond basic financial matters. Plaintiffs applied for the loan based solely on the income of Plaintiff Jeffery N Lamb, as a safety net for the family, due to the fragile nature of a medical condition of one of their children, a disabled minor child. Prior to closing, Plaintiffs were not provided a Good Faith Estimate, or a Truth In Lending Disclosure Statement as is required by Real Estate Settlement and Procedures Act and the Truth in Lending Act. Plaintiffs were rushed when signing the documents during the closing process and provided no time for complete review of the documents unseen until presented at closing. A determination of whether Plaintiffs would be able to make the payments as specified in the loan was never truly made.

26. Plaintiffs were never explained the risks and disadvantages of the loan. Certain fees in obtaining the loan were also not explained to the Plaintiffs including but not limited to "settlement fees," "appraisal fees," "broker fees," "loan lock in fees," etc. Plaintiffs were never explained the Escrow Impounds or Closing Costs. "Collateral" or "Mortgage" Insurance required as a condition of the loan, was purchased using proceeds disbursed at closing without disclosing the insurance requirement or its purchase to Plaintiffs. At the time of closing, Plaintiffs could not understand any of the documents and signed them in good faith based on representations and the trust and confidence the Plaintiffs placed in Defendants and/or, Defendants' predecessors.

27. Plaintiffs are informed and believe and thereon allege that Defendants and/or, Defendants' predecessors intentionally or negligently failed to provide Plaintiffs copies of each and every document Plaintiffs were required to sign at the closing regarding the Loan Transaction and Plaintiffs assert the folder of closing documents provided to Plaintiffs by Defendants is incomplete.

28. Plaintiffs are informed and believe and thereon allege that Defendants and/or, Defendants' predecessors failed to disclose material facts about the Loan, including but not limited to an appraisal, (attached hereto as Exhibit 3) containing false information in regard to right of egress in the subject's back bedroom and falsifying Plaintiffs income on the typed loan application (attached hereto as Exhibit 4) by inflating it almost 43% above the stated handwritten income on documents Plaintiffs provided on 09/11/07 to Defendants and/or, Defendants' predecessors written request, dated 09/07/07. (attached hereto as Exhibit 5)

29. Plaintiffs are informed and believe and thereon allege Defendants and/or, Defendants' predecessors intentionally misled  and deceived Plaintiffs to their detriment, so as to profit, and the "loan closing" was in fact a scheme to trick Plaintiffs into issuing a negotiable security instrument that was pre-sold to investors or subsequently sold to investors, based on the foreclosure or liquidation value of the borrower's collateral, knowing that Plaintiffs would be unable to perform the terms of the Loan.

30. Defendants and/or, Defendants' predecessors verbally verified Plaintiff Jeffery N Lamb's income prior to closing with Plaintiff's employer and again after closing per a Countrywide Home Loans, Inc. Quality Control Audit, dated October 10, 2007, (attached hereto as Exhibit 6 ) completed and returned by Plaintiff's employer.

31. Plaintiffs were victims of Fraud in the Factum since the forgoing misrepresentations caused them to obtain the home loan without accurately realizing, the risks, duties or obligations incurred.

32. On or around December 5, 2007 Plaintiffs disabled child experienced a life threatening medical crisis which necessitated the child to be home bound by order of Physician, (attached hereto as Exhibit 7 ) unable to attend public school full time from December 2007 through May 2008.  Plaintiff Frances C Lamb, then employed full time immediately reduced her employment to part time to care for the disabled child.

33. Over the ensuing months, Plaintiffs experienced an increase in expenses from multiple visits to various physicians for diagnosis and treatment; travel expenses and insurance co-pays along with a decrease in income.  To date, Plaintiffs' disabled child has been unable to return to public school and is educated full time at home by the Plaintiffs.  Plaintiffs do not receive any governmental assistance for the disabled child.  Plaintiff Frances C Lamb is currently a full time home educator and homemaker.

34. Plaintiffs made six on time payments of $1089.57 from November 1, 2007 through March 2008 from a Monthly Home Loan Statement consistently received from Defendants and/or, Defendants' predecessors Countrywide Home Loans Servicing, LP beginning December 2007 through March 2008. (A summary of the statements relevant to this complaint is attached hereto as Exhibit 8.)

35. **February 12, 2008,** Plaintiffs contacted Defendant Countrywide Home Loans Servicing, LP to discuss options in regard to lowering the payment amount and after being transferred several times to various departments, a service agent requested information in regard to current income information. After verbally providing the information to the agent, the agent advised Plaintiffs that they could not afford the home; Plaintiffs bought more home than they could afford; put the home on the market immediately. Plaintiffs listed and showed the home from February 14, 2008 through February 14, 2009, but received no offers.

36. **April 2008,** Upon receipt of the Monthly Loan Statement dated, 03/21/2008, Plaintiffs contacted Defendants and/or, Defendants' predecessors Countrywide Home Loans Servicing, LP in regard to payment increase effective with the May 2008 payment. Plaintiffs advised of the struggle to meet the current payment. Plaintiffs were advised not to send payment if less than amount due on statement, as partial payment would not be accepted. Plaintiffs did not send May payment as directed.

37. **May 2008,** Upon receipt of the Monthly Loan Statement dated, 05/29/ 2008 statement, Plaintiffs contacted Defendants and/or, Defendants' predecessors Countrywide Home Loans Servicing, LP in regard to the amount due on June 1 and were berated by the agent for not having made the May 2008 payment although Plaintiffs were told not to send payment unless the full amount. Plaintiffs were met with abusive and demeaning treatment from the agent and ended the call by hanging up. Plaintiffs paid the past due amount via online access on June 23, 2008.

38. **June 28, 2008,** Plaintiffs received notice of default (hereinafter the "Countrywide Notice of Default" attached hereto as Exhibit 9)   Plaintiffs called Defendants and/or, Defendants' predecessors Countrywide Home Loans Servicing, LP to advise that no funds would be available until July 18, 2008, and experienced abusive and demeaning treatment from the Customer Service Agent who handled the call, Plaintiffs terminated the call by hanging up.

39. **July 18, 2008**, Defendant Countrywide Home Loans Servicing, LP contacted Plaintiffs, demanded and received via phone, two payments of $1096.17 plus $142.02 in fees for a total of $2334.36 to reinstate the account despite the amount stated on the Notice of default at $2,239.68. Plaintiffs were advised to remit $1096.17 by August 1 or $1143.51 would be due after that date. Plaintiffs advised the agent no funds would be available until August 17 and requested that a statement be sent.

40. **August 1, 2008**, Plaintiffs contacted Defendant Countrywide Home Loans Servicing, LP to inquire about the lack of statements and asked to verify payment amount since online access to the account was locked to the Plaintiffs. Plaintiffs were advised by the service agent that no online access could be granted since the account was in default, but a payment of $1096.17 could be remitted via phone. Plaintiffs were confused that the account was in default as they were advised the account had been reinstated with the payment of $2334.36 on July 18. The service agent insisted the system correctly reflected the account. Plaintiffs declined to make the payment via phone.

   A. Plaintiffs are informed and believe and thereon allege Defendant Countrywide Home Loans Servicing, LP by not properly reflecting accurate information in its computer system for the reinstated account resulted in service agents to treating the account as delinquent; agents misinformation to Plaintiffs; blocked online access to Plaintiffs; Monthly Statements were not produced or mailed, creating uncertainty and confusion which caused the Plaintiffs to remain in a state of Default.

41. **August 13, 2008**, Plaintiffs, still unaware the totality of the loan transaction was based on fraudulent income and the foreclosure or liquidation value of the collateral, were advised by Countrywide to pursue a loan modification due to hardship as that was a requirement of obtaining a modification. From mid August 2008 through November 2008, Plaintiffs made multiple contacts to Defendant Countrywide Home Loans Servicing, LP to inquire about modification of the loan due to financial hardship and inquiry in regard to the lack of monthly statements. Plaintiffs faced demeaning lectures in regard to the delinquent account, long periods of time on hold, multiple transfers between service agents in various departments and misinformation from the agents in regard to a packet, "that will be sent" or "had already been sent" containing the required documents and paperwork for the modification request. Plaintiffs never received the alleged modification document package.

42. **December 2008,** Upon receipt of the Monthly Loan Statement, (after numerous requests, for statements) Plaintiffs contacted Defendant Countrywide Home Loans Servicing, LP regarding the

payment amount. Plaintiffs were advised the January 2009 amount due of "$1,190.85 is the monthly payment moving forward". Plaintiffs were further advised online access was restored and "account was not notated as being reviewed for a loan modification." Plaintiffs were advised "not to submit payments but to check back regularly to see if the Home Affordable Modification Program (hereinafter HAMP) was in place, as Defendants and/or Defendants predecessors were awaiting program guidelines." Plaintiffs received Monthly Loan Statements January 2009, February 2009 and March 2009, and contacted Defendants and/or Defendants predecessors Countrywide Home Loans Servicing, LP regularly throughout that time frame for status of the loan modification program.

43. **January 31, 2009,** Plaintiffs retained the assistance of HelpUModify, a nonprofit organization, to obtain a sustainable modification. Multiple HelpUModify advocacy agents worked with Plaintiffs throughout the modification process and for clarity, hereinafter refers to any/all advocate agents as HelpUModify. (attached hereto as Exhibit 10)

    A. Plaintiffs were contacted by Defendant Countrywide Home Loans Servicing, LP numerous times in regard to the status of documents alleged as not being submitted by HelpUModify, and agents regularly pressured Plaintiffs by statements such as "a third party is not needed, "we're here to help" and "there are a lot of scams out there; this company should not be trusted," etc. Defendant regularly gave HelpUModify information that was opposite of information given to plaintiff in regard to status of documents received, status of account review, if account assigned to negotiator, etc. Plaintiffs assert Defendant's conduct indicates a pattern of deliberate and deceitful miscommunication intended to foster mistrust between Plaintiffs and HelpUModify.

44. **March 18, 2009,** via a telephone conference with HelpUModify, reviewing the Plaintiffs' documents received at closing and the closing process itself, Plaintiffs were advised Defendant Countrywide's conduct was considered predatory and deceptive. Plaintiffs learned facts in regard to said loan as qualified and approved on inflated income figures without consideration of Plaintiffs ability to meet obligation, and was based on the foreclosure or liquidation value of the borrower's collateral. Plaintiffs were advised the loan was most likely presold to Defendant Federal National Mortgage Association (Fannie Mae) named as Investor in the MERS System. Plaintiffs were advised of the impact of inaccurate right of egress as stated in the appraisal in the qualification and approval of the loan as well as to the secondary market resale of the loan. Plaintiffs were advised the techniques used at closing such as "Verbal narration of document contents with Defendants page flipping and direction

of Plaintiffs attention to "initial here and/or sign here" combined with Plaintiffs inexperience, contributed to Plaintiffs deception into entering the loan transaction.

45. **April 2009,** Plaintiffs received a monthly loan statement from Defendant  BAC Home Loans Servicing  (hereinafter the "BAC Statements " attached hereto as Exhibit 11)  The statement was the only official notice from defendant Bank of America to Plaintiffs of account being transferred from Countrywide to Bank of America.  Monthly statements were sent sporadically; each month included fees which Defendants and/or Defendants predecessors has ever explained since they first appeared on May 2008 statement.

### Defendants Dual Track Process of Loan Modification and Foreclosure

46. **March 31, 2009** Defendants and/or Defendants predecessors extended Plaintiffs Home Saver Advance Promissory Note from Countrywide Home Loans dated 03/30/2009 received on 03/31/2009 offering additional loan to repay in addition to payment Plaintiffs already declared unsustainable thus requesting modification. (attached hereto as Exhibit 12)

47. **May 26, 2009**  Plaintiffs received notice dated 05/22/09 from ReconTrust per Defendants and/or Defendants predecessors' referral for foreclosure (the letter does not identify the source of the referral). (attached hereto as Exhibit 13)

48. **June 01, 2009**  Defendant BAC Home Loans contacted Plaintiffs via notice dated 05/29/09 stating account referred to Foreclosure Management Committee for review.  (attached hereto as Exhibit 14 )

49. **June 01, 2009**  Defendant Kozeny & McCubbin, LC contacted Plaintiff via Notice of Default dated 05/27/2009 received 06/01/2009 (attached hereto as Exhibit 15)

50. **June 23, 2009**  Unbeknownst to Plaintiffs, Defendants BAC Home Loans Servicing, LP, and Kozeny & McCubbin, LC, filed in the Iron County Recorder of Deeds Office an Appointment of Successor Trustee dated 06/22/2009. (certified copy attached hereto as Exhibit 16 )

> The Grantor is listed as BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP at  400 Countrywide Way, Simi Valley, CA.
> The Grantee is Kozeny & McCubbin, LC Attorneys at Law.

Recording Requested by/Return to: Kozney & McCubbin, LC Attorneys at Law, 12400 Olive, Ste. 555, Creve Coeur, MO.

Page 2 of the Appointment of Successor Trustee, in the paragraph directly below the heading

Appointment of Successor Trustee states:

WHEREAS, BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP is the lawful holder of the promissory note in the amount of $142,300.00 secured by the deed of trust granted by JEFFERY N LAMB AND FRANCES C LAMB, HUSBAND AND WIFE to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE BANK FSB, which was dated September 28, 2007 and recorded in the records of Iron County, Missouri, the property being legally described commencing on the cover page of this instrument and commonly known as RR1 Box 54B, ARCADIA, MO 63621.

WHEREAS, the Deed of Trust provides that the lender shall have the power to remove the original trustee or any successor trustee and to at in writing (acknowledged and recorded) a successor trustee, who shall succeed to the title and all of the rights and powers of the Original Trustee and

WHEREAS, the undersigned is the owner and holder of the note described and secured by the Deed of Trust, and the payee of such debt;

NOW THEREFORE, BE IT KNOWN that the said holder, through the undersigned, its duly authorized officer, removes the Original Trustee and any other duly appointed Successor Trustee under the above referenced Deed of Trust and hereby appoints KOZENY & MCCUBBIN, LC ATTORNEYS AT LAW, 12400 Olive, Ste 555 Creve Coeur, MO 63141, Main Phone: 314-991-0255 as Successor Trustee under said deed of trust, with full power and authority to execute said trust as fully as if he were the named trustee herein.

IN WITNESS THEREOF, the undersigned has set his/her hand hereto this 22 day June 2009.

BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP

By: Jerry Morgan

As: Attorney In Fact

51. Plaintiffs are informed and believe and thereon allege, the conduct of Defendants BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP and Kozeny & McCubbin LC with respect to the Appointment of Successor Trustee is governed by the Deed of Trust applicapble to Defendant (previously attached hereto as Exhibit 2) on Page 12 paragraph 24 of the Deed of Trust: under "Substitute Trustee" which states:

Lender at its option may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

52. Plaintiffs are informed and believe and thereon allege the Lender as defined on page 1 of the Deed of Trust is Countrywide Bank FSB. This paragraph does not state that successors, assigns, or nominees may appoint a Successor Trustee. BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing, LP through its agent Jerry Morgan, in the capacity of Attorney in Fact, citing authority of Mortgage Electronic Registration Systems, as Nominee for defunct Countrywide Bank FSB., purports BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing, LP the "owner and holder of the note described and secured by the Deed of Trust, and the payee of such debt." and further purports to execute the appointment of Successor Trustee to Kozeny & McCubbin Attorneys at Law in order to exercise the powers in the Deed of Trust concealing material fact regarding Jerry Morgan an associate of the firm of Kozeny & McCubbin Attorneys at Law.

53. Plaintiffs are informed and believe and thereon allege, the conduct of Defendant Kozeny & McCubbin LC with respect to the Appointment of Successor Trustee as governed by the Deed of Trust was executed deceptively in violation of the Deed of Trust; is INVALID and nothing more than prima facie evidence of Defendants fraudulent act of attempting to foreclose Plaintiffs real property by filing false and misleading documents into a public office in Missouri.

54. **June 30, 2009** Defendant Bank of America extended to Plaintiffs via Fed Ex: Homes Affordable Modification Program Offer # 1 (hereinafter HAMP) from the Bank of America Home Retention Group, Houston, TX dated 06/26 2009 received 06/30/2009 an offer with an unsustainable trial period payment plan with expiration date of July 26, 2009. (attached hereto as Exhibit 17)

55. **July 6, 2009** Plaintiffs contacted Defendant Bank of America negotiator Mr. Olsen via phone to discuss a reduction in principal with debt forgiveness and a modification based on actual income and expenses due to the fraud in the loan origination. Plaintiffs were advised that there is no modification program called HOPE for Homeowners with those terms. Mr. Olsen reviewed the HAMP Offer which as presented does not disclose permanent modification terms. Plaintiffs pressed full disclosure of the terms of the HAMP permanent modification i.e. temporary interest rate reduction etc with annual step

up increases each year and advised trial payment was unsustainable. Mr. Olsen advised terms are per program guidelines and the best that can be offered.

56. **July7, 2009** Plaintiffs contacted Defendant Federal National Mortgage Association via phone (Fannie Mae) in regard to the HOPE for Homeowners Program. Plaintiff advised Defendant Fannie Mae agent Paul of fraud in the origination of the loan. The call was transferred to a Level II agent Raymond; agent verified Defendant Fannie Mae "securitized the loan", is participating in the HOPE for Homeowners program; took Plaintiffs advisement of fraud in origination of loan and instructed Plaintiffs to call the negotiator at the servicer, Defendant Bank of America.

57. **July 7, 2009** Plaintiffs again contacted Defendant Bank of America negotiator Mr. Olsen, via phone to clarify HOPE for Homeowners program. Mr. Olsen placed the call on hold to check with the onsite representative from Defendant Fannie Mae about the HOPE for Homeowners Program. Mr. Olsen stated the representative confirmed Defendant Fannie Mae is participating in the program, but that Defendant Bank of America did not have any particulars on the guidelines and did not know when the program would be implemented. Mr. Olsen advised Plaintiffs if the HAMP offer was rejected, Plaintiffs faced immediate foreclosure.

58. **July 10, 2009** Defendant Bank of America extended to Plaintiffs: Homes Affordable Modification Program Offer # 2 from Bank of America Home Retention Division, Broomfield, CO dated 07/03/ 2009 received on 07/10/2009 an offer with same unsustainable trial period payment plan terms as HAMP 1, with expiration date of August 2, 2009. (attached hereto as Exhibit 18)

59. **July 15, 2009** Defendant Bank of America extended to Plaintiffs: An Approval for unsustainable Modification with a Modification Agreement from HOPE Team at Bank of America Home Retention Division, Pittsburgh, PA dated 07/11/2009 received 07/15/2009. (attached hereto as Exhibit 19)

60. **July 17, 2009** Plaintiffs contacted Defendant Bank of America negotiator Mr. Olsen in regard to counter terms to be submitted for approval to Investors as the Loan Modification Offer terms were unsustainable. Mr. Olsen agreed to present the counter terms to Investors.

61. **July 20, 2009** Plaintiffs received Notice of Acceleration dated July 13, 2009 from Defendant Kozeny & McCubbin. (attached hereto as Exhibit 20)

62. **July 21, 2009** Defendant Bank of America negotiator Mr. Olsen contacted Plaintiffs to advise Investors had rejected Plaintiffs request to change terms of Loan Modification Offer.  Mr. Olsen pressed Plaintiffs to "strongly consider the one time offer of guaranteed payment as opposed to the HAMP terms being subject to change and stressed the Modification included all arrears and was the best available of the three offers."

   A. Plaintiffs contacted Defendant Federal National Mortgage Association via phone 07/21/09 in regard to verification of "presentation by Mr. Olsen to the Investor" Plaintiffs advised Defendant Fannie Mae service agent Paul of nature of call. The call was transferred to a Level II agent Claudia, and an automated greeting for voice mail answered.  Plaintiffs left voice mail but never received return call from Fannie Mae.

63. **July 22, 2009** Defendant Bank of America agent Shaundra Nache with HOPE Team contacted Plaintiffs to discuss the letter received via Fed Ex containing loan modification documents." Agent Nache advised Plaintiffs "the documents are time sensitive and must be en route on August 10, 2009."

64. **July 23, 2009** Plaintiffs contacted Defendant Bank of America negotiator Mr. Olsen via phone to review various scenarios of counter terms Plaintiffs had calculated that would provide needed relief with a sustainable loan modification. Mr. Olsen stated he would present counter offer to Investors and call Plaintiffs with Investors decision.

65. **July 31, 2009** Plaintiffs contacted Defendant Bank of America negotiator Mr. Olsen via phone for status update of presentation to Investors. Mr. Olsen stated Investors had not responded and stated he would call Plaintiffs with the decision.

66. **August 3, 2009** Plaintiffs unable to contact Defendant Bank of America negotiator Mr. Olsen directly for status update of presentation to Investors.  Plaintiffs receive automated greeting stating extension does not have voice mail.

67. **August 4, 2009** Plaintiffs unable to contact Defendant Bank of America negotiator Mr. Olsen for status update of presentation to Investors.  Plaintiffs contacted HelpUModify via phone to discuss what options were available to obtain a sustainable modification. Help U Modify contacted Judy Kelly employed at Defendant Bank of America via e-mail. (attached hereto as Exhibit 21)

68. **August 5, 2009** Defendant Bank of America agent Shaundra Nache with HOPE Team contacted Plaintiffs via phone in regard to Plaintiffs "definite decision to the offer on the table" (in reference to loan modification offer, as both HAMP offers were expired). Plaintiffs advised offer was being considered concurrently with Plaintiffs awaiting response from Advocacy Group in Mr. Lewis' Office; and Plaintiffs awaiting response to counter proposal submitted to Investors by Bank of America negotiator Olsen. Agent stated she was "making a note on the account Plaintiffs working with third party, agent cautioned documents were time sensitive."

69. **August 6, 2009** Plaintiffs received letter via FedEx dated 08/05/2009 from Defendant Bank of America Urban Settlement Services, Pittsburgh, PA thanking Plaintiffs for responding to BAC Home Loans Servicing offer to modify terms of mortgage. Letter confirms Plaintiffs intent to decline offer. Plaintiffs never expressed intent to decline the offer and had stated so to Defendant Bank of America agent Shaundra Nache with HOPE Team offer was being considered on August 5, 2009. (attached hereto as Exhibit 22)

   A. Defendant Bank of America agent Linda with HOPE Team contacted Plaintiffs regarding misstatement of intent to decline offer. Plaintiffs advised offer was under consideration and requested account notation to reflect Plaintiffs accurate intention of consideration. Agent Linda pressed Plaintiffs for commitment to modification offer, Plaintiffs advised of unsuccessful efforts to reach Customer Advocate and negotiator Olsen, details of loan origination fraud etc. Agent Linda via conference call added agent Penelope in Home Retention, to call. Agent Penelope advised Plaintiffs "no other pending offers or review in system and account is not assigned to a negotiator." Penelope stated Mr. Olsen be advised via email to contact Plaintiffs.

   B. Plaintiffs contacted HelpUModify via phone in regard to status of inquiry made to Customer Advocate. HelpUModify advised Judy Kelly had not responded to email or follow up voice mail. HelpUModify requested Plaintiffs send details of earlier contact with Defendant Bank of America via e-mail to HelpUModify.

   C. Plaintiffs contacted Defendant Bank of America via toll free number listed on intent to decline letter. Plaintiffs were given conflicting information from Defendant Bank of America service agents Victor in Loss Mitigation/Home Retention/Foreclosure Department and Kenneth Sloan, Supervisor to the Department.(Plaintiffs Contact Log Documentation attached hereto as Exhibit 23)

70. **August 10, 2009** Plaintiffs contacted Defendant Bank of America agent Brandi with HOPE Team to request extension of offer to allow time to connect with Negotiator Olsen and Advocacy Group. Agent Brandi advised Plaintiffs no extension could be granted, however, if Plaintiffs sent in papers for current modification offer and a better modification became available, Plaintiffs would be able to go with the better offer.

    A. Plaintiffs contacted Defendant Bank of America and spoke to agent Desiree in Home Retention in regard to current offer being unsustainable and were advised of short sale options and that submission of a buyer's offer for evaluation would stop the foreclosure process.

    B. Plaintiffs contacted Defendant Bank of America negotiator Mr. Olsen for status update of presentation to Investors and to advise of unsuccessful efforts to reach Advocacy Group in Office of the Chairman for assistance. Mr. Olsen advised Investors had declined counter proposal, advised Plaintiffs to accept the one time offer on the table and to continue to work with the Advocacy Group toward a better modification since modification offer will expire and once it expires, Plaintiffs face immediate foreclosure, this is the only offer available to Plaintiffs.

71. Upon information and belief, at the time of entering into the loan modification Agreement, facing imminent foreclosure, reasonably relying on representations by Defendant Bank of America agent Brandi of HOPE Team, and negotiator Olsen regarding Bank of America continuing to work toward better terms in the modification, in good faith, Plaintiff Jeffery N Lamb entered into loan modification agreement; remitted required August payment and returned at Plaintiffs expense, via overnight UPS to Defendant Bank of America. (previously attached hereto as Exhibit 19)

72. Plaintiffs are informed and believe and thereon allege that the subsequent loan modification offered by Defendant and entered into between Plaintiff Jeffery N Lamb and Defendants was in fact a scheme to Plaintiffs detriment for Defendants profit, whereby under duress and threat of immediate foreclosure, intentionally misleading Plaintiffs to believe the terms of the loan modification could be changed rather quickly subsequent to its execution; Defendants compelled and lured Plaintiff into issuing a negotiable security instrument to real property claimed as collateral through an enforceable security interest, which the participants obtained through the execution of the loan modification agreement to take non judicial action to effect dispossession and sale of borrower's real property based

on the foreclosure or liquidation value of the Plaintiff's collateral; knowing that Plaintiffs would be unable to immediately perform the terms of the loan modification.

73. Defendants unconscionable, fraudulent, deceptive and unlawful conduct resulted in luring and compelling the Plaintiff to enter into the loan modification agreement to Plaintiffs detriment for Defendants profit and concealed the real nature of the loan modification. Defendants continue to engage in, fraudulent, deceptive and unlawful conduct to this day.

74. **August 11 2009** Plaintiffs contacted Defendant Bank of America negotiator Olsen to discuss the sustainable modification HOPE Agent Brandi and Mr. Olsen had indicated would be available to Plaintiffs. Mr. Olsen advised Plaintiffs of Bank of Americas policy regarding the account by stating: "The account would not be eligible for a modification for 12 months and would only be considered if Plaintiffs maintained account current for 12 months." Plaintiffs immediately contacted HelpUModify.

75. **August 14, 2009** HelpUModify agent contacted Plaintiffs via phone advising Defendant Bank of America Customer Advocate, Alice Rengstorf had requested updated financial information, last two pay stubs, two months bank statements, hardship letter etc. Plaintiffs provided information to HelpUModify agent via email on 08/14/09. (HelpUModify records indicate information submitted on 08/19/2009 to Bank of America and Bank of America Customer Advocate Alice Rengstorf' s response to HelpUModify dated 08/20/09 attached hereto as Exhibit 24) Defendant Bank of America Customer Advocate Alice Rengstorf's written response dated 08/20/09 to Help U Modify misstates HelpUModify date of contact to Judith Kelly as August 10, 2009 instead of August 4, 2009.

76. **August 20, 2009** Defendant Bank of America Home Loans contacted Plaintiffs via USPS undated notice received 08/20/2009. (attached hereto as Exhibit 25) which states:

77. We are the servicer of the above loan and are sending this letter on behalf of the assignee of your loan. As we have previously advised you, we have found it necessary to refer your loan to our attorneys to commence a foreclosure proceeding on the property that secures the loan. There is still time, however, for you to work with us toward a better resolution of your obligation. In order to proceed with the foreclosure, we are causing an assignment document to be filed in the county records which evidences the prior transfer of your loan to the current assignee. The assignment document is dated 06/23/2009. The transfer of your loan is recorded on the books and records of the assignee and the servicer. Additionally, the individual assignment document of the mortgage

or deed of trust that secures your loan is currently reflected or in the future may be reflected, in the public records of the local County Recorder's office where your property is located.

78. **08/26/2009** Plaintiffs contacted Defendant Bank of America via phone and spoke with service agent Melissa in regard to status of review. Agent advised financial data was faxed but must be sent via e-mail in order for account to be reviewed and provided email address for submission.

79. **08/27/2099** Defendant Bank of America contacted Plaintiffs to discuss hardship situation and advised all information should be submitted directly by Plaintiffs without the need of a third party.

80. **09/01/2009** Plaintiffs contacted Defendant Bank of America via phone and spoke with service agent John in Home Retention. Agent advised Plaintiffs had been given incorrect information by agent Melissa on 08/26/09 as to turnaround time, advised Plaintiffs to call back 09/12/2009.

81. **09/14/2009** Plaintiffs contacted Defendant Bank of America via phone and spoke with service agent Lissette in Workout Department who advised modification signed August 10, 2009 cannot be modified for 12 months. Financials are not in the system, hardship letter and physician's letter show in the system, but Plaintiffs account will only be considered for review after 12 months on time payments. Agent Lissette advised Plaintiffs to put home on market immediately as accelerated foreclosure will be pursued if payments are missed. Agent Lissette advised Plaintiffs that request for assistance from Customer Advocate in Chairman's Office was closed due to execution of modification on 08/10/09. Modification is not reflected in system and may be up to 90 days before entered. (Plaintiffs Contact Log documentation for 08/26/2009 – 09/14/2009 attached hereto as Exhibit 26)

82. **09/23/2009** Plaintiffs contacted Defendant Bank of America Customer Advocate Alice Rengstorf in regard to inability to contact Ms. Jennifer Catherine Hall as advised. Ms. Rengstorf advised and committed to put in a request for account to be reviewed based on Net income (a direct contradiction of every other agent previously spoken with), follow up with providing all documentation to Sr. Negotiator assigned to account and to advise Plaintiffs when account is assigned to Sr. Negotiator. Plaintiffs advised Ms. Rengstorf of Non Borrower Spouse authorized to discuss account and followed up with written authorization via email. Plaintiffs advised Ms. Rengstorf of fraud in origination of loan. Plaintiffs verified contact information. (Plaintiffs Contact Log documentation for 09/23/2009 attached hereto as Exhibit 27)

83. **10/07/2009** Defendant Bank of America Customer Advocate Alice Rengstorf contacted Plaintiffs via written follow up to Plaintiffs telephone conversation; dated 09/29/09 received 10/07/09 (attached hereto as Exhibit 28). Ms. Rengstorf's written response dated 09/27/09 misstates date of phone contact with Plaintiffs as 09/25/09. Ms. Rengstorf advised Plaintiffs to contact Defendant Bank of America negotiator Mr. David Kozik in Home Retention Division in regard to status of request for payment assistance. Ms. Rengstorf dismisses Plaintiffs allegation in regard to false information in Appraisal, and states concerns regarding origination of loan were referred to Bank of America Origination Division for review and reply. The last paragraph incorrectly thanks Mr. Abbott for the opportunity to be of service.

84. **09/30/2009** Plaintiffs contacted Defendant Bank of America negotiator Mr. David Kozik. Negotiator Kozik advised Plaintiffs the account was Pre-Approved for a MHA modification. Plaintiffs advised Mr. Kozik that two MHA offers have already been made and rejected as trial payment is unsustainable. Plaintiffs advised loan modification executed 08/10/2009 as unsustainable and advised of sustainable payment range and also advised of service agents statements that modification payment amount of $892.59 would not be accepted as partial payments are not accepted. (Plaintiffs Contact Log Documentation for 09/30/2009 through 10/01/2009 attached hereto as Exhibit 29)

85. **10/01/2009** HelpUModify contacted Defendant Bank of America AVP Judy Kelly via email requesting intervention on behalf of Plaintiffs.

86. **10/05/2009** Plaintiffs contacted Defendant Bank of America negotiator Mr. David Kozik who advised Plaintiffs file was prepared and in line to be submitted for review by Investors on 10/08/2009. Plaintiffs disagreed with Negotiator Kozik's recommendation and requested changes. Plaintiffs are ignorant of what if any proposal submitted to Investors contained. Negotiator Kozik advised Plaintiffs to check back 10/14/2009 if not contacted by that date. (Plaintiffs Contact Log documentation for 10/05/2009 through 10/07/2009 attached hereto as Exhibit 30)

87. **10/13/2009** Plaintiffs contacted Defendant Bank of America negotiator Mr. David Kozik who advised no decision yet made by Investor on the account.

88. **10/14/2009** Plaintiffs contacted Defendant Bank of America negotiator Mr. David Kozik via voice mail inquiry in regard to status of review.

89. **10/15/2009** Plaintiffs contacted Defendant Bank of America negotiator Mr. David Kozik via voice mail inquiry in regard to status of review. Plaintiffs contacted Defendant Bank of America Customer Service and call transferred by service agent Derryl to HOPE Team queue. HOPE Team service agent Ismael advised workout status screen shows account in active processing and update scheduled for 10/26/2009 at which time Plaintiffs can expect more information to be available or the delivery of a workout package.

90. **11/09/2009** Plaintiffs contacted Defendant Bank of America negotiator Mr. David Kozik via phone for status update. Copy of Modification Agreement and October 2009 Monthly Loan Statement submitted to Negotiator Kozik via email to address unexplained fees on Loan Modification and Monthly Statements as well as incorrect payment amounts, and request for explanation of payment submitted with modification agreement placed into partial balance account. Negotiator Kozik advised Plaintiffs not to be concerned in regard to the payments as that would all be worked out in the modification process and the fees would be credited back to Plaintiffs. Plaintiffs unable to contact negotiator directly after this date.

91. **12/07/2009** Plaintiffs contacted Defendant Bank of America Customer Service and after multiple transfers spoke with Jeff De Los Santos, Customer Service Team Manager, Office of the Chairman and advised of Negotiator Kozik not returning voicemails or emails. Plaintiffs advised of five months of delays in getting assistance, no explanations provided in regard to escrow amounts, fees charged, etc., service manager De Los Santos advised he would remove late fees from account and for Plaintiffs to focus on providing information needed for a review to proceed. Plaintiffs advised service manager of fraud in origination of loan and submitted updated financial information via email service manager provided. Plaintiffs advised of other creditors of unsecured debt pursuing judgments for liens against property collateral. Plaintiffs requested expedited review for modification and advised if target payment cannot be reached, Plaintiffs prepared to surrender Deed in Lieu and requested written copy of procedures for Deed in Lieu. Plaintiffs never received said copy. (Plaintiffs Contact Log documentation attached hereto as Exhibit 31)

92. **12/10/2009** Defendant Bank of America Home Loans contacted Plaintiffs via Notice of Intent to Accelerate dated 12/07/2009 received 12/10/2009. Plaintiffs contacted via email Defendant Bank of America Customer Service Team Manager, Office of the Chairman Jeff De Los Santos via email attaching the Notice. ( Acceleration Notice attached hereto as Exhibit 32)

93. **12/11/2009** Plaintiffs contacted Defendant Bank of America Customer Service Team Manager, Office of the Chairman Jeff De Los Santos via email in regard to Notice of Acceleration and status of account review. (Plaintiffs Contact Log documentation previously attached hereto as Exhibit 31)

94. **12/12/2009** Defendant Bank of America Customer Service Team Manager, Office of the Chairman Jeff De Los Santos contacted Plaintiffs via email and advised the information submitted was attached to an existing Service Request for revised payment assistance/modification and internal requests were sent to Negotiator Kozik and Ms. Kelly Freeman, Manager of Negotiator Kozik for further review. . (Plaintiffs Contact Log documentation previously attached hereto as Exhibit 31)

95. **12/17/2009** Plaintiffs contacted Defendant Bank of America Customer Service Team Manager, Office of the Chairman Jeff De Los Santos via email for update on status of review and reiterated relief needed, fraud, lack of communication from Bank of America etc. (Plaintiffs Contact Log documentation previously attached hereto as Exhibit 31)

96. **12/17/2009** Plaintiffs contacted Defendant Bank of America via phone and after multiple transfers spoke with Zachary Harrod. Plaintiffs are ignorant of agent Harrod's department and position with Bank of America. Plaintiffs' reiterated lack of communication in regard to status of review, reiterated need of relief, reiterated fraud in origination, etc. Plaintiffs followed up contact via email on 12/18/2009. (Plaintiffs Contact Log documentation previously attached hereto as Exhibit 31)

97. **12/23/2009** Defendant Bank of America negotiator Mr. David Kozik contacted Plaintiffs on 12/23/2009 to advise that "the management team" had denied the latest modification request. Mr. Kozik stated the Modification signed in August in their opinion, "is at 31% of income and is the best that can be done." Plaintiffs expressed doubt that investors had been given an opportunity to have a voice in the proceedings, in spite of, "the investors denied the request for modification" being the standard response to inquiry of the status of modification reviews until Mr. Kozik's statement "the management team denied the request for modification" on 12/23/2009  Plaintiffs requested an expedited Deed In Lieu of Foreclosure and Mr. Kozik stated that account would be forwarded to the team that handles Deed in Lieu. (Plaintiffs Contact Log documentation previously attached hereto as Exhibit 31)

98. **12/24/2009** Defendant Bank of America, Deed in Lieu agent, Mr. Kenneth Welch contacted Plaintiffs to review the Deed in Lieu process - Plaintiffs politely refused to list the property for 90 days as required for Deed in Lieu. Mr. Welch stated he would assign the account for another review to determine if a sustainable payment could be reached.

99. **12/28/2009** Plaintiffs contacted Defendant Bank of America, Deed in Lieu agent, Mr. Welch to follow up in regard to status of another review. Mr. Welch had electronically assigned the account for review to a person who is out of the office till 01/04/2010. Mr. Welch discussed the option of up to $2500.00 in relocation expenses if Deed in Lieu is approved by the investors.

100. **01/04/2010** Defendant Bank of America, Deed in Lieu agent, Mr. Welch contacted Plaintiffs to advise title search had been requested and Plaintiffs should expect contacted by appraiser to schedule an appraisal property. Mr. Welch will also request up to $2500.00 moving expenses at the time Deed in Lieu is submitted for Investors approval. Plaintiffs asked about the status of another review, Mr. Welch stated that the PITI ratio prevents approval of the requested modification. Mr. Welch stated he could not explain what PITI ratio is. Mr. Welch then asked if Plaintiffs could bring the escrow account current and assume payment of the taxes and insurance for the property instead of an escrow account. Plaintiffs declined to bring the escrow account current unless a sustainable modification was executed. Plaintiffs advised Mr. Welch that the loan should never have been received, due to the inflated income and false appraisal relied on to obtain qualification and approval of the original loan whereas accurate income would have resulted in denial. Plaintiffs advised Mr. Welch of damaged credit and loss of home due to the acts of others as unjust.

101. **01/04/2010** Defendant Bank of America affiliated appraiser, Mr. Andrew Bram, identified himself as with LandSafe Appraisal Services, Inc., contacted Plaintiffs to schedule an appointment for an appraisal. Since Mr. Bram's original appraisal report for Countrywide contained false information which facilitated the sale of original loan to Defendant Fannie Mae, Plaintiffs good conscience declined to allow Mr. Bram complete another appraisal on behalf of Defendant Bank of America. Plaintiff immediately contacted Defendant Bank of America Deed in Lieu agent Mr. Kenneth Welch leaving a voice mail stating the same; advising Plaintiffs are willing the home be appraised for the Deed in Lieu; however, it must be an unbiased and accurate appraisal.

102. **01/05/2010** Plaintiffs contacted Defendant Bank Of America Deed in Lieu agent Mr. Welch as follow up to voice mail left 01/04/10 in regard to Mr. Bram. Plaintiffs again reviewed the issues with the original appraisal and the original loan with Mr. Welch.

103. **01/05/2010** Defendant Bank of America agent Mr. Welch contacted Plaintiffs via phone and was unwilling to continue the call due to Plaintiffs statement in regard to recording the call for quality assurance and litigation purposes. Plaintiff's ended call advising further communication would be through an attorney. *(Plaintiffs Contact Log documentation 12/07/09 – 01/05/10 previously attached hereto as Exhibit 31)*

104. **01/15/2010** Plaintiffs' attorney submitted written request for entire account file via e-mail to Defendant Bank of America Customer Advocate, Office of Chairman, Alice Rengstorf and Carbon Copy to Defendant Bank of America Customer Service Team Manager, Office of the Chairman Jeff De Los Santos. (Plaintiffs Contact Log documentation attached hereto as Exhibit 33)

105. **01/21/2009** Plaintiffs contacted Defendant Bank of America Customer Advocate, Office of Chairman, Alice Rengstorf to verify receipt of written request. Ms. Rengstorf advised "not recalling receiving a letter from Attorney Burcham, but if others were carbon copied then those persons would have handled getting the letter to the proper department." Ms Rengstorf placed the call on a lengthy hold and returned to advise Plaintiff's account "had been assigned to the Regulatory Agency Division" and provided contact information for Mary Intal and her Supervisor Sherese Anderson to whom the account had been assigned Plaintiffs began receiving calls daily Monday through Saturday from Defendant BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing LP (via caller identification, no messages left) ending Saturday, February 6, 2010.

106. **02/06/2010** Defendant Bank of America Customer Service Agent Paula contacted Plaintiffs who advised per advice of attorney Plaintiff declines to discuss account. Plaintiffs provided Attorney contact information and inquired as to the status of the account assignment to Regulatory Agency Division. Per Agent Paula, no notation is in system regarding account assignment to Regulatory Agency Division.

107. **03/05/2010** Plaintiffs' attorney submitted second written request for entire account file via e-mail to Defendant Bank of America Customer Advocate, Office of Chairman, Alice Rengstorf and Carbon

Copy to Defendant Bank of America Customer Service Team Manager, Office of the Chairman Jeff De Los Santos. (Plaintiffs Contact Log documentation attached hereto as Exhibit 34)

108. **07/12/2010** Defendant BAC Home Loans Servicing, LP Home Retention Division, Broomfield, CO contacted Plaintiffs via Fed Ex with a Notice dated July 8, 2010 stating on July 15, 2009, per Plaintiffs request the Home Affordable Modification Program offer was cancelled. Plaintiffs assert they never made said request; Plaintiffs repeatedly advised Defendants the HAMP offer was unsustainable and simply allowed offer to expire. (attached hereto as Exhibit 35)

109. **09/24/2010** Defendants Kozeny & McCubbin, LC and Mortgage Electronic Registration Systems, INC. through its "certifying officer, Paul Smith", as nominee for Defendant Countrywide Bank FSB, filed in the Iron County Recorder of Deeds Office an Assignment of Deed of Trust dated September 16, 2010. (certified copy attached hereto as Exhibit 36) The Grantor is listed as Mortgage Electronic Registration Systems, Inc. as nominee for defunct Countrywide Bank, FSB at PO Box 2026 Flint, MI 48501. The Grantee is listed as BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP at 7105 Corporate Drive, Plano Texas 75093. Kozeny & McCubbin, LC assigned to Plaintiffs account a unique and exclusive account number. This unique and exclusive number is listed on page 2 of the Assignment of the Deed of Trust directly under the legal description paragraph.

> "FOR VALUE RECEIVED, comes now for Mortgage Electronic Registration Systems, Inc, as nominee for Countrywide Banks FSB (herein "Assignor"); whose address is PO Box 2026, Flint, MI 48501, its successors and assigns, on behalf of and with authority of *Countrywide Bank, FSB and hereby assigns and transfers to, BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP* (herein "Assignee"); whose address is: 7105 Corporate Drive, Plano TX 75093, its successors and assigns, all its right, title and interest in and to a certain Mortgage executed by Jeffery N Lamb, and Frances C Lamb, husband and wife, and given to secure payment of $142,300.00 which Deed of Trust is of record in Book 463 at Page 063 of the land records of Iron County, State of MO, encumbering the following legal description......"

110. Plaintiffs are informed and believe and thereon allege that Defendants conduct with respect to the deed of trust in this case is governed by "MERS Terms and Conditions and Policies" applicable to Defendant Kozeny & McCubbin LC specifically as directly below the Notary Public Signature line is the Kozeny & McCubbin, LC unique and exclusive account number assigned to Plaintiffs account.

Per the MERS Policy Bulletin Number 2009-2 dated March 2, 2009 (attached hereto as Exhibit 37)
listed directly under A summary of the changes follows:

Only officers of a Member may be designated by MERS as "certifying officers."

100. Plaintiffs are informed and believe and thereon allege "Paul Smith" is a fictitious person
for the following reason: The Notary Certification Portion of the Assignment of the Deed of Trust
which appears to have been completed by Notary Jennifer Wamsganz listing the printed name of
"Paul Smith" appears to be in the same handwriting as compared to the printed name By: "Paul
Smith" listed directly below the alleged signature of "Paul Smith". The Notary Certification Portion
lists "Paul Smith" whose name appears as "certifying" of Mortgage Electronic Registration Systems,
Inc.

101. Defendants Kozeny & McCubbin, LC, through its "certifying officer, Paul Smith" attempted to act
as agent for defunct Countrywide Bank FSB; and in the capacity of MERS nominee and as an
undisclosed dual agent; is effectively attempting to purport transfer the Deed of Trust from one
principal to another principal to purport BAC Home Loans Servicing, LP fka Countrywide Home
Loans Servicing, LP the "lawful owner and holder of the note described and secured by the Deed of
Trust, and the payee of such debt." and concurrent "lawful holder of the Deed of Trust".

102. Defendants MERS, BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing, LP
and defunct Countrywide Bank, FSB are parties to the assignment of the Deed of Trust. Defendant
Kozeny & McCubbin as undisclosed dual agent; is effectively attempting to purport transfer the Deed
of Trust from one principal to another principal to purport BAC Home Loans Servicing, LP fka
Countrywide Home Loans Servicing, LP the "lawful owner and holder of the note described and
secured by the Deed of Trust, and the payee of such debt." and concurrent "lawful holder of the Deed
of Trust".

103. Plaintiffs are informed and believe and thereon allege the purported Appointment of Successor
Trustee document filed 06/23/2009 dated 06/22/2009 was executed in violation of the Deed of Trust;
is INVALID, therefore the subsequent Assignment of the Deed of Trust is INVALID.

104. Plaintiffs are informed and believe and thereon allege the purported Assignment of Deed of Trust
document is nothing more than prima facie evidence of Defendants fraudulent act of attempting to

foreclose Plaintiff's real property by filing false and misleading documents into a public office in Missouri.

105. **09/27/2010** Defendant Kozeny & McCubbin contacted Plaintiffs via Certified Mail "Notice of Trustee Sale" dated September 23, received September 27 which scheduled Plaintiff's home for sale by public auction on October 14, 2010. Defendant Kozeny & McCubbin caused to be published in The Mountain Echo Newspaper, Ironton, County of Iron, Missouri, a legal Notice of said sale on the following dates 09/22/10, 09/29/10, 10/06/10, 10/13/10. Said sale was postponed by national moratorium declared by Bank of America on October 9, 2010 (attached hereto as Exhibit 38)

106. **10/26/2010** Defendant Kozeny & McCubbin contacted Plaintiffs via Certified Mail "Notice of Trustee Sale" dated, October 22, 2010, received October 26, 2010 which scheduled Plaintiff's home for sale by public auction on November 12, 2010. Defendant Kozeny & McCubbin caused to be published in The Mountain Echo Newspaper, Ironton, County of Iron, Missouri, a legal Notice of said sale on the following dates 10/20/10, 10/27/10. Said sale was postponed without explanation. (attached hereto as Exhibit 39)

107. **10/27/2010** Plaintiffs electronically filed a Complaint in regard to Defendants Countrywide FSB, Bank of America NA, BAC Home Loans Servicing fka Countrywide Home Loans Servicing, with Office of the Comptroller of Currency (hereinafter OCC). (attached hereto as Exhibit 40)

108. **10/28/2010** Plaintiffs electronically filed a Complaint with Office of the Missouri Attorney General in regard to Defendants Countrywide FSB, Bank of America NA, BAC Home Loans Servicing fka Countrywide Home Loans Servicing, (attached hereto as Exhibit 41)

109. **10/29/2010** Plaintiffs electronically filed a Complaint with Office of the Missouri Attorney Genera in regard to Defendants Kozeny & McCubbin LC . (previously attached hereto as Exhibit 41) Plaintiffs contacted Defendants Bank of America, and Kozeny & McCubbin LC to advise of Complaints pending with the Office of the Comptroller of Currency and Office of Missouri Attorney General as instructed by the agent from Missouri Attorney General's Office Consumer Protection Hotline.

110. **11/05/2010** Plaintiffs contacted Defendant BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing via Certified Mail with a Qualified Written Request. pursuant to Real Estate Settlement and Procedures Act 12 U.S.C. § 2605 (e) (k).  (attached hereto as Exhibit 42)

111. **11/05/2010** Defendant Bank of America contacted Plaintiffs via USPS letter dated 10/29/2010, received 11/05/2010 regarding fees that have been assessed or may be assessed to said loan account. (attached hereto as Exhibit 43)

112. **11/23/2010** Defendant Kozeny & McCubbin contacted Plaintiffs via Certified Mail "Notice of Trustee Sale" dated, November 18, 2010 received, November 23, 2010 which scheduled Plaintiff's home for sale by public auction on December 9, 2010. Defendant Kozeny & McCubbin caused to be published in The Mountain Echo Newspaper, Ironton, County of Iron, Missouri, a legal Notice of said sale on the following dates 11/17/10, 11/24/10. Said sale was postponed without explanation (attached hereto as Exhibit 44)

113. **11/29/2010** Plaintiff contacted Defendant Fannie Mae via e-mail to report suspected fraud in Loan Origination and advise of Complaints filed with Office of the Comptroller of Currency and Office of Missouri Attorney General.  (attached hereto as Exhibit 45)

114. **11/30/2010** Defendant Bank of America Customer Advocate, Executive Relations, Office of the CEO and President Tammy Bob contacted Plaintiffs via telephone.  (Plaintiff Contact Log attached hereto as Exhibit 46)

115. **12/01/2010** Defendant Fannie Mae Level II agent Angie contacted Plaintiffs via telephone to request documentation supporting the suspicion of fraud be submitted electronically to Fannie Mae and provided email address.

116. **12/02/2010** Plaintiffs electronically submitted documentation to Defendant Fannie Mae. (previously attached hereto as Exhibit 46)

117. **12/02/2010** Defendant Bank of America contacted Plaintiffs via USPS letter dated 11/07/2010, received 12/02/2010 regarding maximum fees that may apply to said loan account if requesting certain special services regarding said account.  (attached hereto as Exhibit 47)

118. **12/13/2010** Defendant Bank of America Customer Advocate, Executive Relations, Office of the CEO and President Tammy Bob contacted Plaintiffs via letter in response to Complaint filed with Office of the Comptroller of Currency (attached hereto as Exhibit 48)

119. **12/14/2010** Defendant Bank of America contacted Plaintiffs via USPS a Loan History Statement dated 12/06/2010, received 12/14/2010. (attached hereto as Exhibit 49)

120. **12/15/2010** Defendant Bank of America Litigation Specialist, Foreclosure, Bankruptcy, and Risk Management, Qualified Written Request Group agent Elizabeth Pfister contacted Plaintiffs via letter to advise receipt on November 15, 2010, of Plaintiffs Qualified Written Request dated November 5, 2010. The letter states that after an investigation, Plaintiffs can expect a response. (attached hereto as Exhibit 50)

121. **12/17/2010** Plaintiffs electronically submitted additional documentation to Defendant Fannie Mae. (previously attached hereto as Exhibit 46)

122. **01/03/2011** Defendant Federal National Mortgage Association filed a FORM 8-K reporting that on December 31, 2010, Fannie Mae entered into an agreement with Defendants Bank of America, NA, BAC Home Loans Servicing, LP and Countrywide Home Loans, Inc, an agreement which provided substantial resolution to outstanding repurchase requests sold to Fannie Mae by Countrywide and addresses a certain number of other loans sold to Fannie Mae by Countrywide, permitting Fannie Mae to bring claims for any additional breaches of representations and warranties identified with respect to those loans. (attached hereto as Exhibit 51) Plaintiffs are ignorant as to the effect this agreement may have upon the Plaintiffs loan transaction that Federal National Mortgage Association purportedly owns.

123. **01/04/2011** Defendant Kozeny & McCubbin contacted Plaintiffs via Certified Mail "Notice of Trustee Sale" dated December 28, received January 4, 2011 which scheduled Plaintiff's home for sale by public auction on January 20, 2011. Defendant Kozeny & McCubbin caused to be published in The Mountain Echo Newspaper, Ironton, County of Iron, Missouri, a legal Notice of said sale on the following dates 12/29/10, 01/05/11, 01/12/11. Said sale was postponed without explanation. (attached hereto as Exhibit 52)

124. **01/07/2011** Plaintiffs contacted via fax Defendant Bank of America Litigation Specialist, Foreclosure, Bankruptcy, and Risk Management, Qualified Written Request Group agent Elizabeth Pfister a second Request for Loan Ownership Information pursuant to 12 U.S.C. § 2605(e) and (k) and 15 U.S.C. § 1641(f)(2). (attached hereto as Exhibit 53)

125. **01/07/2011** Plaintiff contacted via Certified Mail, Defendant Bank of America Customer Advocacy Unit in response to letter received December 13, 2010 from Customer Advocate, Executive Relations, Office of the CEO and President Tammy Bob. (attached hereto as Exhibit 54)

126. **01/07/2011** Plaintiff contacted via USPS Mail, Office of the Comptroller of Currency in response to correspondence received December 13, 2010 from Customer Advocate, Executive Relations, Office of the CEO and President Tammy Bob. (attached hereto as Exhibit 55)

127. **01/07/2011** Plaintiff contacted via USPS Mail, Office of Missouri Attorney General, Consumer Protection Unit to provide authorization for account to be discussed with Defendant Bank of America and documentation supporting issues with regard to Bank of America. (attached hereto as Exhibit 56)

128. **01/12/2011** Unbeknownst to Plaintiffs, Defendant Kozeny & McCubbin LC contacted The Mountain Echo Newspaper to cancel publication scheduled 01/19/2011 and subsequently placed an order of insertion on 01/14/2011 for a different scheduled sale date of 02/17/2011.

129. **01/18/2011** Plaintiff contacted Defendant Kozeny & McCubbin, LC via fax with Objection to Trustee's Foreclosure Sale scheduled for January 20, 2011 and required 24 hours Notice of Plaintiffs intent to file application for Temporary Restraining Order (attached hereto as Exhibit 57)

130. **01/19/2011** Plaintiff contacted Defendant Kozeny & McCubbin, LC via fax instructing disregard of Objection and Notice as Plaintiffs had been informed there was no sale to seek a stay of via inquiry to The Mountain Echo Staff in regard to missing publication in the January 19, 2011 edition. (attached hereto as Exhibit 58)

131. **01/31/2011** Defendant Kozeny & McCubbin contacted Plaintiffs via Certified Mail "Notice of Trustee Sale" dated January 26, received January 31, 2011 which scheduled Plaintiff's home for sale by public auction on February 17, 2011. Defendant Kozeny & McCubbin caused to be published in The Mountain Echo Newspaper, Ironton, County of Iron, Missouri, a legal Notice of said sale on the

following dates 01/26/11. Conspicuously absent from the published notice is "Successor Trustee, at the request of the legal holder of the debt, who has elected to declare the entire debt due and payable." Said sale was cancelled without explanation. (attached hereto as Exhibit 59)

132. **02/14/2011** Defendant Kozeny & McCubbin contacted Plaintiffs via Certified Mail "Notice of Trustee Sale" dated February 9, 2011 received February 14, 2011 which scheduled Plaintiff's home for sale by public auction on March 3, 2011. Defendant Kozeny & McCubbin caused to be published in The Mountain Echo Newspaper, Ironton, County of Iron, Missouri, a legal Notice of said sale on the following dates 02/09/11, 02/16/11,02/23/11, 03/02/11. Conspicuously absent from the published notice is "Successor Trustee, at the request of the legal holder of the debt, who has elected to declare the entire debt due and payable." Said sale was cancelled without explanation. (attached hereto as Exhibit 60)

133. **02/14/2011** Defendant Bank of America through Counsel Blank Rome LLP, contacted Plaintiffs via USPS in regard to Plaintiffs Qualified Written Request dated November 5, 2010. (attached hereto as Exhibit 61)

134. **02/28/2011** Plaintiff contacted Defendant Kozeny & McCubbin, LC via fax with Objection to Trustee's Foreclosure Sale scheduled for March 3, 2011 and required 24 hours Notice of Plaintiffs intent to file application for Temporary Restraining Order (attached hereto as Exhibit 62)

135. **03/01/2011** Plaintiff contacted Defendant Kozeny & McCubbin, LC to verify the status of the sale and spoke with Chris who advised no sale was scheduled for March 3, 2011.

136. **03/04/2011** Defendants Kozeny & McCubbin, LC and BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP, citing the authority of the Deed of Trust and Mortgage Electronic Registration Systems as nominee for Countrywide Bank FSB, filed in the Iron County Recorder of Deeds Office an Appointment of Successor Trustee dated March 2, 2011. (certified copy attached hereto as Exhibit 63)

137. Plaintiffs are informed and believe and thereon allege, the conduct of Defendants Kozeny & McCubbin LC and BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP with regard to the Appointment of Successor Trustee was in response to the Plaintiffs Objection to the Trustee's Sale scheduled for March 3, 2011. (previously attached hereto as Exhibit 62) and is prima

facie evidence of Defendants pattern of deceptive and unlawful conduct in attempting to foreclose Plaintiffs real property.

138. **03/07/2011** Defendant Bank of America Customer Advocate, Executive Relations, Office of the CEO and President, Tonia White contacted Plaintiffs via telephone to discuss the issues in Plaintiffs correspondence dated 01/07/2011 to Defendant Bank of America's Customer Advocacy Unit.

139. **03/10/11** Plaintiffs were subjected to what was called "A Property Inspection to Validate Occupancy". The man at the door refused to provide the name of the company he worked for or to produce his credentials. The "inspector" presented a blank slip of paper as authorization. (attached hereto as Exhibit 64) The "inspector" stated, "that information is not relevant". As Plaintiffs recorded tag # and make of vehicle the "inspector" from his vehicle, offered to show credentials. Plaintiffs immediately called BAC Home Loans Servicing LP to complain. The complaint regarding the conduct of the "inspector" was added the information to the complaint already on file with the Mo Attorney General's Consumer Protection Unit by Plaintiffs.

140. **03/17/2011** Defendant Kozeny & McCubbin contacted Plaintiffs via Certified Mail "Notice of Trustee Sale" dated March 11, 2011 received March 17, 2011 which scheduled Plaintiff's home for sale by public auction on April 7, 2011. Defendant Kozeny & McCubbin caused to be published in The Mountain Echo Newspaper, Ironton, County of Iron, Missouri, a legal Notice of said sale on the following dates 03/16/11, 03/23/11, 03/30/11, 04/06/11.  Conspicuously absent from the published notice is "Successor Trustee, at the request of the legal holder of the debt, who has elected to declare the entire debt due and payable." (attached hereto as Exhibit 65)

141. **03/21/11** Plaintiffs were subjected to a second "Property Inspection to Validate Occupancy". The woman at the door stated presented a blank slip identical to the one presented by the previous "inspector" (previously attached hereto as Exhibit 64) The "inspector" stated she was with "ABC Mortgage" after Plaintiffs advised the previous "inspector" had stated the information was not relevant. She declined to show her credentials, but stated that the previous inspector was her husband. Plaintiffs advised of the fragile nature of their disabled minor child's disability and how these visits are causing undue expense and unnecessary stress as BAC is well aware we occupy the property as we are asked each time we contact BAC or BAC contacts us and that the previous visit on 03/10/2011 to verify occupancy should have been sufficient. Plaintiffs further advised that providing credentials should be the first priority for anyone purporting to be sent to by the "lender" with a small

slip of incomplete paper to verify occupancy." The complaint regarding the second inspection was added to the complaint already on file with the Mo Attorney General's Consumer Protection Unit by Plaintiffs.

142. **03/23/2011** Plaintiffs via Certified Mail contacted all named defendants with a written correspondence exercising the right to rescind the loan transaction. (attached hereto as Exhibit 66)

143. **03/24/2011** Plaintiffs filed a document Notice of Rescission in the Iron County Recorder of Deeds Office. (certified copy attached hereto as Exhibit 69)

144. **04/02/2011** Defendant Kozeny & McCubbin contacted Plaintiffs via letter dated March 29, 2011, received 04/02/11 acknowledging receipt of the written correspondence (the notice of Plaintiffs intent to rescind the Loan Transaction). The correspondence indicates the Defendants intent to proceed with the sale. (attached hereto as Exhibit 67)

145. **04/02/2011** Defendant Bank of America Customer Advocate, Executive Relations, Office of the CEO and President Tonia White contacted Plaintiffs via letter in response to Plaintiffs correspondence dated January 7, 2011, received by the Office of the CEO and President of Bank of America on January 12, 2011. (attached hereto as Exhibit 68) Ms. White's correspondence to Plaintiffs included a copy of Ms. Bob's previous correspondence to Plaintiffs dated 12/6/2010, and Ms. Whites' reference to Bank of Americas Records indicates Plaintiffs account is insured by *Republic Mortgage Insurance Company which directly contradicts Ms. Bob's reference on* 12/06/2010 to Plaintiffs that Bank of America's records indicate PMI has not been placed on Plaintiffs mortgage account. Plaintiffs assert that Defendants documentation regarding any type lender placed insurance is unreliable unless documentation of any policy from the inception of the loan to the present is provided by Defendant to the Court.

146. **04/04/2011** Plaintiff contacted Defendant Kozeny & McCubbin, LC via fax with to advise of filing of Notice of Rescission with Iron County Recorder of Deeds and demand written confirmation of cancellation of Trustee's Foreclosure Sale scheduled for April 7, 2011.(attached hereto as Exhibit 69)

147. **04/05/2011**  Plaintiff contacted Defendant Kozeny & McCubbin, LC via fax with Objection to Trustee's Foreclosure Sale scheduled for April 7, 2011 and required 24 hours Notice of Plaintiffs intent to file application for Temporary Restraining Order (attached hereto as Exhibit 70)

148. **04/05/2011**  Defendant Kozeny & McCubbin contacted Plaintiffs via fax dated 04/05/2011 received 04/05/2011. The correspondence indicates the Defendants intent to proceed with the sale  (attached hereto as Exhibit 70)

149. Plaintiffs assert that Defendants have not provided requested documentation required to validate the alleged debt including but not limited to:  The origination of the loan transaction, including complete documentation of the chain of title, transfers, sales, Power of Attorney, letters of transmittal, certificates of asset backed securities, any and all "Pool Agreement(s)" or "servicing agreements" between the lender named at closing and any party or parties who could claim an interest in the loan closing or documents pertaining thereto and any and any subsequent transfer therof since it's inception, commencing with the original wet ink Plaintiffs handwritten loan application, a complete accounting of any and all payments to any and all parties connected with this loan transaction.

**FIRST CAUSE OF ACTION**

**FRAUD**

**(Against Defendant Countrywide Bank, FSB and its agents, successors, and assigns)**

150. Plaintiffs restate and reallege the allegations contained in Paragraphs 1 through 149 above as if fully set forth herein.

151. The loan transaction at issue in a consumer credit transaction subject to the provisions of Truth in Lending Act; Real Estate Settlement and Procedures Act and Home Ownership and Equity Protection Act .

152. Defendants Countrywide Bank, FSB and Bank of America NA, BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing, LP are creditors as that term is defined by 15 U.S.C. § 1602. The transaction between Plaintiffs and these Defendants was a consumer loan transaction wherein the Defendants extended credit to the Plaintiff and such credit was secured by an interest purportedly held by the Defendants in the Property.  As a consumer credit transaction the Defendants were required to

provide mandatory Truth in Lending disclosure statements and notice of the borrower's right to rescind, specifying the date on which the three day rescission period expires.

153. In the course of the transaction described herein, Defendants violated TILA in numerous ways, including but not limited to: failing to provide required disclosures prior to consummation of the transaction; failing to make required disclosures clearly and conspicuously in writing; failure to timely deliver to Plaintiff certain notices required by statue; and failing to disclose said terms to Plaintiffs prior to consummation of the transaction.

154. The facts surrounding this loan transaction and subsequent loan modification were purposefully hidden to prevent Plaintiffs from discovering the true nature of the documents and facts surrounding these transactions. These facts continue to be hidden from Plaintiffs to this day.

155. Defendant Countrywide or its agent's sleight of hand conduct at closing including but not limited to "Verbal narration of document contents with Defendants page flipping and direction of Plaintiffs attention to "initial here and/or sign here" on the various documents; lack of prior disclosures of Good Faith Estimate and Truth in Lending Disclosure as required by Real Estate Settlement and Procedures Act and Truth In Lending Act are material in that Defendant or its agent effectively preyed on inexperienced Plaintiffs belief, trust and confidence in Defendant or its agent in order to induce Plaintiffs to enter into the loan agreement knowing the loan agreement was qualified and approved based on fraudulent inflation of Plaintiffs income and an appraisal containing false statements regarding right of egress.

156. Defendant or its agent intended that is representations would be relied upon by Plaintiffs, and that in reliance thereupon, Plaintiffs would be induced to enter into the loan agreement.

157. Plaintiffs were ignorant the loan agreement was qualified and approved based on fraudulent inflation of Plaintiffs income and an appraisal containing false statements regarding right of egress.

158. Plaintiffs reasonably relied upon the representations by Defendant Countrywide or its agent in entering the loan agreement.

159. Plaintiffs belief, trust and reliance upon the representations by Defendant Countrywide or its agent, proximately caused Plaintiffs injury in that Plaintiffs entered into a loan agreement they were ignorant

was qualified and approved based on fraudulent inflation of Plaintiffs income and an appraisal containing false statements regarding right of egress, resulting in Plaintiffs subsequent default within months of entering the agreement causing Plaintiffs to be in jeopardy of losing their home through foreclosure.

160. As a direct and proximate result of said Defendants fraudulent and wrongful conduct Plaintiffs have suffered economic losses and damages in amounts not yet fully ascertained, but within the jurisdiction of this Court.

161. Defendants pursued said course of conduct intentionally and in conscious disregard of the rights of Plaintiffs and their economic interests. In order to deter such conduct in the future, and prevent repetition therof as a practice, by way of punishment and as example, Plaintiffs pray that pecuniary and exemplary damages be awarded according to proof at trial pursuant to Federal and State Statutes.

## SECOND CAUSE OF ACTION
## FRAUD IN THE INDUCEMENT
**(Against Bank of America, NA, BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP and Kozeny & McCubbin LC)**

162. Plaintiffs restate and reallege the allegations contained in paragraphs 1 through 161 above as if fully set forth herein.

163. As alleged herein, Defendants Bank of America, NA and BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP and Kozeny & McCubbin LC or its agents, and each of them, have made several misrepresentations representations with regard to material facts.

164. These representations made by Defendants were false.

165. Defendants Bank of America, NA and BAC Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP and Kozeny & McCubbin LC or its agents knew its representations were false when made, or made such representations in reckless disregard for the truth.

166. Defendants Bank of America, NA and BAC Home Loans Servicing, LP fka Countrywide Home
Loans Servicing LP and Kozeny & McCubbin LC intended that its representations would be relied
upon by Plaintiffs, and that in reliance thereupon, Plaintiffs would be induced to enter into the loan
modification agreement.

167. Plaintiffs reasonably relied on said material representations.

168. As a result of Defendants Countrywide or its agent's misconduct, the promissory note and Deed of
Trust was void and unenforceable as of its inception. Defendant Bank of America, NA and BAC
Home Loans Servicing, LP fka Countrywide Home Loans Servicing LP and Kozeny & McCubbin
LC fully aware of Defendant Countrywide's misconduct, exerted undue influence,
duress and threat of immediate foreclosure, intentionally misleading Plaintiffs to believe the terms of
the Loan Modification Agreement would be changed rather quickly subsequent to its execution to
sustainable terms; Defendants compelled and lured Plaintiff into issuing a negotiable security
instrument based on the foreclosure or liquidation value of the Plaintiff's collateral; knowing that
Plaintiffs would be unable to immediately perform the terms of the Loan Modification to Plaintiffs
detriment for Defendants profit; to establish an interest in Plaintiffs real property claimed as collateral
through an enforceable security interest to take non judicial action to effect dispossession and sale of
borrower's real property.

169. Defendants Bank of America, NA and BAC Home Loans Servicing, LP fka Countrywide Home
Loans Servicing LP and Kozeny & McCubbin LC unconscionable, malicious fraudulent, deceptive
and unlawful conduct resulted in luring and compelling the Plaintiff to enter into the loan
modification agreement and concealed the real nature of the loan modification agreement.
Defendants continue to engage in, fraudulent, deceptive and unlawful conduct to this day.

170. Plaintiffs reliance on Defendants false statements and misrepresentations was a substantial factor in
causing Plaintiffs to be in jeopardy of losing their home through foreclosure.

171. As a direct and proximate result of said Defendants fraudulent and wrongful conduct Plaintiffs have
suffered economic losses and damages in amounts not yet fully ascertained, but within the jurisdiction
of this Court.

172. Defendants are guilty of malice, fraud, and oppression, as defined in Missouri and Defendant's actions were malicious and done willfully, in conscious disregard of the rights and safety of Plaintiffs in that the actions were calculated to injure Plaintiffs. As, such Plaintiffs are entitled to recover in addition to actual damages, punitive damages to punish Defendants and to deter future misconduct.

173. Defendants pursued said course of conduct intentionally and in conscious disregard of the rights and safety of Plaintiffs and their economic interests. In order to deter such conduct in the future, and prevent repetition therof as a practice, by way of punishment and as example, Plaintiffs pray that pecuniary and exemplary damages be awarded according to proof at trial pursuant to Federal and State Statutes.

### THIRD CAUSE OF ACTION
### VIOLATION OF CONSUMER PROTECTION ACT,
### TRUTH IN LENDING ACT and REAL ESTATE SETTLEMENT AND PROCEDURES ACT
### (Against Defendant Countrywide Bank, FSB and its agents, successors and assigns)

174. Plaintiffs restate and reallege the allegations contained in Paragraphs 1 through 173 above as if fully set forth herein.

175. The loan transaction at issue in a consumer credit transaction subject to the provisions of Truth in Lending Act; and Real Estate Settlement and Procedures Act.

176. Defendants Countrywide Bank, FSB and Bank of America NA, BAC Home Loans Servicing LP fka Countrywide Home Loans Servicing, LP are creditors as that term is defined by 15 U.S.C. § 1602. The transaction between Plaintiffs and these Defendants was a consumer loan transaction wherein the Defendants extended credit to the Plaintiff and such credit was secured by an interest purportedly held by the Defendants in the Property. As a consumer credit transaction the Defendants were required to provide mandatory Truth in Lending disclosure statements and notice of the borrower's right to rescind, specifying the date on which the three day rescission period expires.

177. In the course of the transaction described herein, Defendants violated Truth in Lending Act and Real Estate Settlement and Procedures Act in numerous ways, including but not limited to: failing to provide required disclosures prior to consummation of the transaction; failing to make required disclosures clearly and conspicuously in writing; failure to timely deliver to Plaintiff certain notices

required by statue; and failing to disclose said terms to Plaintiffs prior to consummation of the transaction.

178. The facts surrounding this loan transaction and subsequent loan modification were purposefully hidden to prevent Plaintiffs from discovering the true nature of the documents and facts surrounding these transactions. These facts continue to be hidden from Plaintiffs to this day.

179. Defendant Countrywide or its agent's sleight of hand conduct at closing including but not limited to "Verbal narration of document contents with Defendants page flipping and direction of Plaintiffs attention to "initial here and/or sign here" on the various documents; lack of prior disclosures of Good Faith Estimate and Truth in Lending Disclosure as required by Real Estate Settlement and Procedures Act and Truth In Lending Act are material in that Defendant or its agent effectively preyed on inexperienced Plaintiffs belief, trust and confidence in Defendant or its agent in order to induce Plaintiffs to enter into the loan agreement knowing the loan agreement was qualified and approved based on fraudulent inflation of Plaintiffs income and an appraisal containing false statements regarding right of egress.

180. Defendant or its agent intended that is representations would be relied upon by Plaintiffs, and that in reliance thereupon, Plaintiffs would be induced to enter into the loan agreement.

181. Plaintiffs were ignorant the loan agreement was qualified and approved based on fraudulent inflation of Plaintiffs income and an appraisal containing false statements regarding right of egress.

182. Plaintiffs reasonably relied upon the representations by Defendant Countrywide or its agent in entering the loan agreement.

183. Plaintiffs belief, trust and reliance upon the representations by Defendant Countrywide or its agent, proximately caused Plaintiffs injury in that Plaintiffs entered into a loan agreement they were ignorant was qualified and approved based on fraudulent inflation of Plaintiffs income and an appraisal containing false statements regarding right of egress, resulting in Plaintiffs subsequent default within months of entering the agreement causing Plaintiffs to be in jeopardy of losing their home through foreclosure.

184. As a direct and proximate result of said Defendants fraudulent and wrongful conduct Plaintiffs have suffered economic losses and damages in amounts not yet fully ascertained, but within the jurisdiction of this Court.

185. Defendants pursued said course of conduct intentionally and in conscious disregard of the rights and safety of Plaintiffs and their economic interests. In order to deter such conduct in the future, and prevent repetition therof as a practice, by way of punishment and as example, Plaintiffs pray that pecuniary and exemplary damages be awarded according to proof at trial pursuant to Federal and State Statutes.

## DEMAND FOR JURY TRIAL

Plaintiffs, *Jeffery N. Lamb, pro se*, *and Frances C Lamb, pro se*, demand a trial by jury.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. Enter a judgment in Plaintiffs favor against Defendants, and each of them;

2. Grant an order enjoining Defendants to show cause if they have any, why they should not be enjoined as set forth below, during the pendency of the action;

3. Grant a temporary restraining order, preliminary and permanent injunction preventing Defendants or anyone acting under or in concert with them, from collecting on the subject loan and from causing the Property to be sold, assigned or transferred to a third party;

4. Award to Plaintiffs damages and injunctive relief under Missouri's common and statutory law regarding predatory, deceptive or fraudulent acts;

5. Award to Plaintiffs exemplary damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct;

Page **39** of **40**

WHEREFORE, Plaintiffs respectfully request that this Court grant the relief requested herein for the reasons set forth, and for any other and further relief which is just and proper.

Respectfully submitted this 11th day of April 2011,


By _Jeffery N. Lamb_

*Jeffery N. Lamb, pro se*
PO Box 403
Ironton, Missouri 63650

By _Frances C. Lamb_

*Frances C. Lamb, pro se*
PO Box 403
Ironton, Missouri 63650

## AFFIDAVIT OF JEFFERY N. LAMB

STATE OF MISSOURI        COUNTY OF IRON

BEFORE ME personally appeared, Jeffery N. Lamb who, being by me first duly sworn and identified in accordance with Missouri law, deposes and says:

1. My names is Jeffery N. Lamb, plaintiff herein.

2. I have read and understood the attached foregoing Plaintiffs' Verified Amended Petition and each fact alleged therein is true and correct according to my best information, knowledge and belief.

FURTHER THE AFFIANT SAYETH NAUGHT.

this _11th_ day of _April_ 2011.

By _Jeffery N. Lamb_

*Jeffery N. Lamb, pro se*
PO Box 403
Ironton, Missouri 63650
Voice: 573.271.9781
Fax:    636.600.5244

_Linda Bodine_
Notary Public's Signature

LINDA BODINE
My Commission Expires
January 6, 2013
Iron County
Commission #09723052

My commission expires: _1/6/2013_

## AFFIDAVIT OF FRANCES C. LAMB

STATE OF MISSOURI        COUNTY OF IRON

BEFORE ME personally appeared, Frances C. Lamb who, being by me first duly sworn and identified in accordance with Missouri law, deposes and says:

1. My names is Frances C. Lamb, plaintiff herein.

2. I have read and understood the attached foregoing Plaintiffs' Verified Amended Petition and each fact alleged therein is true and correct according to my best information, knowledge and belief.

FURTHER THE AFFIANT SAYETH NAUGHT.

this _11th_ day of _April_____ 2011.

By _Frances C. Lamb_____

*Frances C. Lamb*, pro se
 PO Box 403
Ironton, Missouri 63650
Voice: 573.271.9781
Fax:   636.600.5244

_Linda Bodine_____
Notary Public's Signature

My commission expires: _1/6/2013_

NOTARY
SEAL
PUBLIC
STATE OF MISSOURI

LINDA BODINE
My Commission Expires
January 6, 2013
Iron County
Commission #09723052